UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHN DOE,

Plaintiff,

-vs-

UNIVERSITY OF ROCHESTER,

Defendant.

Case No.: 26-cv-06103

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE UNIVERSITY OF ROCHESTER'S MOTION TO DISMISS**

**HODGSON RUSS LLP**
1800 Bausch & Lomb Place
Rochester, New York 14604
(585) 454-0700
*Attorneys for defendant University of Rochester*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii
PRELIMINARY STATEMENT ........ 1
ARGUMENT ........ 1
I. PLAINTIFF FAILS TO PLAUSIBLY ALLEGE DELIBERATE INDIFFERENCE TO THE TRUTH OF JANE'S ALLEGATIONS ........ 1
A. The Alleged Process Failures Do Not Rise to the Level of Deliberate Indifference Under *Schiebel* ........ 2
B. The Hearing Officer's Credibility Findings are Not "Inexplicable" Within the Meaning of *Schiebel* ........ 2
II. PLAINTIFF FAILS TO PLAUSIBLY ALLEGE GENDER BIAS SUFFICIENT TO PLEAD AN ERRONEOUS OUTCOME CLAIM ........ 5
III. PLAINTIFF'S BREACH OF CONTRACT CLAIM REMAINS DEFICIENT FOR THE REASONS IDENTIFIED BY THE UNIVERSITY ........ 8
IV. PLAINTIFF'S NEGLIGENCE CLAIM FAILS DUE TO THE ABSENCE OF ANY TORT DUTY ........ 9
V. PLAINTIFF FAILS TO DISTINGUISH HIS BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM ........ 10
CONCLUSION ........ 11

# TABLE OF AUTHORITIES

**Cases**

*Applewhite v. Accuhealth, Inc.*,
21 N.Y.3d 420 (2013) ..... 9

*Bernstein v. JPMorgan Chase Bank, N.A.*,
775 F. Supp. 3d 701 (S.D.N.Y. Mar. 28, 2025) ..... 8

*Doe v. Columbia Univ.*,
831 F.3d 46 (2d Cir. 2016) ..... 7

*Doe v. Oberlin Coll.*,
963 F.3d 580 (6th Cir. 2020) ..... 4, 5

*Doe v. Rochester Inst. of Tech.,*
2024 U.S. Dist. LEXIS 42245 (W.D.N.Y. Mar. 11, 2024) ..... 3, 4

*Doe v. Stonehill Coll., Inc.*,
55 F.4th 302 (1st Cir. 2022) ..... 7

*Doe v. Syracuse Univ.*,
2023 U.S. Dist. LEXIS 106859 (N.D.N.Y June 21, 2023) ..... 8

*Doe v. Univ. of Ark.*,
974 F.3d 858 (8th Cir. 2020) ..... 4

*Doe v. Univ. of S. Ind.*,
43 F.4th 784, 793 (7th Cir. 2022) ..... 5, 7

*Khodakhah v. Montefiore Med. Acad. Health Sys., Inc.*,
2025 U.S. Dist. LEXIS 181716 (S.D.N.Y. Sept. 16, 2025) ..... 1

*Menaker v. Hofstra Univ.*,
935 F.3d 20 (2d Cir. 2019) ..... 5, 7

*Noakes v. Syracuse Univ.*,
369 F. Supp. 3d 397 (N.D.N.Y. 2019) ..... 9

*Nungesser v. Columbia Univ.*,
169 F. Supp. 3d 353 (S.D.N.Y. 2016) ..... 10

*Papelino v. Albany Coll. of Pharmacy of Union Univ.*,
633 F.3d 81 (2d Cir. 2011) ..... 9, 10

*Roe v. St. John's Univ.*,
91 F.4th 643 (2d Cir. 2024)....................................................................................5

*Schiebel v. Schoharie Cent. Sch. Dist.*,
120 F.4th 1082 (2d Cir. 2024).............................................................................1, 2, 3

## PRELIMINARY STATEMENT

When Plaintiff's rhetoric is put to the side, the inferences he asks the Court to accept are belied by his Complaint. Plaintiff claims he was entitled to more process, but the Complaint details the robust process that Plaintiff received. Plaintiff asks the Court to infer the University was *deliberately indifferent* to truth and presumed him guilty, but the outcome of the disciplinary process proves otherwise: the Hearing Officer rejected many of Jane's claims, credited several of Plaintiff's assertions, and found Plaintiff *not* responsible for several charges. By definition, then, Plaintiff was not presumed guilty, and Jane's allegations were not presumed true. Plaintiff summarily characterizes the outcome as "baby-splitting" but utterly fails to reconcile the outcome of the proceeding with the notion of *deliberate indifference to truth*. Moreover, Plaintiff asks the Court to infer that everyone involved in this process—the Title IX Coordinator who previously practiced education law as a partner in private practice, *two* University investigators who compiled an extensive investigatory report, and the independently contracted male Hearing Officer who adjudicated the claims—all harbored anti-male bias based entirely on events that occurred many years before any of them worked for the University. Plaintiff's Opposition parrots language from distinguishable cases but does not, and cannot, grapple with the Complaint's fatal defects.

## ARGUMENT

### I. PLAINTIFF FAILS TO PLAUSIBLY ALLEGE DELIBERATE INDIFFERENCE TO THE TRUTH OF JANE'S ALLEGATIONS

To avoid dismissal, Plaintiff must plausibly allege "deliberate indifference to the truth or falsity of [Jane's] accusation[s][.]" *Schiebel v. Schoharie Cent. Sch. Dist.*, 120 F.4th 1082, 1097 (2d Cir. 2024). Disputing a decisionmaker's credibility findings does not meet this standard. *See Khodakhah v. Montefiore Med. Acad. Health Sys., Inc.*, 2025 U.S. Dist. LEXIS 181716, at *8 (S.D.N.Y. Sept. 16, 2025).

### A. The Alleged Process Failures Do Not Rise to the Level of Deliberate Indifference Under *Schiebel*

Plaintiff anchors his deliberate indifference claim in *Schiebel*, but doing so requires him to ignore every meaningful fact that tipped the scale in that unique case. In *Schiebel*, the small, rural school district had not established a compliant Title IX process, leading the Second Circuit to observe that "[n]one of the[] required procedures [under the Title IX regulations] were followed[.]" 120 F.4th at 1100; *see* Dkt. 20-1, pp. 10-12. The plaintiff received *no* opportunity to present evidence, *no* opportunity to inspect adverse evidence, *no* cross examination, and *no* hearing. *Id.* And the investigator and decisionmaker were *the same person*, something the Title IX regulations expressly prohibit. *Id.* In his Opposition, Plaintiff cannot muster even a cursory reference to these facts, because acknowledging them plainly confirms the inadequacy of his own allegations.

Indeed, the allegations here, even taken as true, are not the stuff of deliberate indifference. Plaintiff disputes the Hearing Officer's credibility findings (at least the ones that went against him) but does not dispute that the University's robust process included all the things missing in *Schiebel*: written notice; interviews of the parties and 6 witnesses; collection of text messages, photographs, medical records, and police reports; a *draft* report (on which Plaintiff provided feedback) and a final report; a 3-day hearing where Plaintiff and Jane testified and Plaintiff's legal counsel cross examined Jane; and an independent Hearing Officer who had no role in the process except to adjudicate the charges. Dkt. 20-1, pp. 11-12. Taking exception with a robust process is not the same as alleging *the absence of any process.* The latter states a claim; the former does not.

### B. The Hearing Officer's Credibility Findings are Not "Inexplicable" Within the Meaning of *Schiebel*

The *Schiebel* Court also held that a Title IX respondent may state a deliberate indifference claim where a decision is so "inexplicable" that a court can plausibly infer indifference to truth or

falsity. 120 F.4th at 1097. Plaintiff parrots the holding in *Schiebel* by claiming "the Hearing Officer's decision was utterly inexplicable," *see* Dkt. 27 at 15, but here again, Plaintiff cannot acknowledge the facts of *Schiebel* because doing so only highlights the Complaint's deficiencies.

In *Schiebel*, the decisionmaker (1) blatantly misconstrued plaintiff's explanation of the events as an admission of guilt when clearly it was not, and (2) relied on a "tendentious definition of sexual harassment" that was "inconsistent with the district policy[.]" Dkt. 20-1, pp. 13-15, *quoting Schiebel*, 120 F. 4th 1082. In short, the district presumed the plaintiff's guilt and found him responsible for the charges. From these facts, the court plausibly inferred that "the investigation was not aimed at uncovering the truth." *Schiebel*, 120 F.4th at 1102. In contrast here, the Hearing Officer found in Plaintiff's favor on half the charges and credited Plaintiff's assertion that Jane "consent[ed] to having intercourse[.]" Complaint, ¶ 325(g), (h). That outcome materially distinguishes this case from *Schiebel* and forecloses any plausible inference that the University was indifferent to truth or falsity. Plaintiff has no credible response on this commonsense point. His conclusory assertion that "baby-splitting is no defense to unfair treatment," Dkt. 27, p. 22, is a false strawman argument because "unfair treatment" is not the standard; rather, Plaintiff must plausibly allege *indifference to truth*. Plaintiff cannot do so on these facts.

Plaintiff's "burden flipping" argument makes no difference. *See* Dkt. 27, p. 15 (arguing "[t]he Hearing Officer committed the exact same error as the adjudicator in *RIT*"). *RIT* has no bearing on Count I because the plaintiff in *RIT* did not make any claim for deliberate indifference and Judge Geraci did not apply the deliberate indifference standard in his analysis. *Doe v. RIT,* 2024 U.S. Dist. LEXIS 42245 (W.D.N.Y. Mar. 11, 2024). On that basis alone, the Court may easily reject Plaintiff's effort to lean on *RIT* to support his deliberate indifference claim.

Nor is *RIT* factually analogous. In *RIT*, a hearing panel member stated during a break in

the disciplinary hearing that "she intended to 'flip' the issue and question Plaintiff regarding how he had obtained Roe's consent[.]" 2024 U.S. Dist. LEXIS 42245, *11. The hearing panel thus intentionally and knowingly "reduced the hotly contested factual disputes to a single question: could Plaintiff defend himself against Roe's allegations by claiming that he 'had consent due to [their] prior sexual history'?" *Id.*, *13. In other words, the hearing panel expressly required the plaintiff to prove his innocence. Having "flipped" the burden (in the words of the decisionmaker), the panel adjudicated the matter "as if the credibility of [the complainant's] account [was] either irrelevant or accepted by default—both of which violate RIT's express promises regarding the appropriate standard of proof." *Id.*, *21. In contrast here, the Hearing Officer here did *not* require Plaintiff to prove his innocence,[1] did *not* ignore Jane's credibility, and did *not* accept her claims "by default," as evidenced by his credibility determinations *against her* and the split decision. For these reasons, this Court need not reject Judge Geraci's "burden flipping" analysis in order to dismiss Plaintiff's claim here.

Finally, Plaintiff disputes the Hearing Officer's credibility determinations to conclude that his findings were "against the substantial weight of the evidence." Dkt. 27 at p. 17-18. Once again, the cases on which Plaintiff primarily relies *do not analyze deliberate indifference claims. See Doe v. Univ. of Ark.*, 974 F.3d 858 (8th Cir. 2020) (no deliberate indifference claim alleged or analyzed); *Doe v. Oberlin Coll.*, 963 F.3d 580 (6th Cir. 2020) (same). And once again, those cases are unique and distinguishable. For example, in *Oberlin*, the question in the underlying disciplinary matter

[1] Without providing context, the two carefully crafted Paragraphs of the Complaint that allegedly show "burden flipping" merely quote a few words from the Hearing Officer's decision in which he observed there was a "lack of evidence demonstrating affirmative consent," Complaint, ¶ 342, and "no evidence that affirmative consent was obtained." *Id.*, ¶ 353. This selectively (and minimally) quoted language plucked from the written decision does not plausibly suggest that the Hearing Officer reduced the entire dispute to whether *Plaintiff had proven affirmative consent*.

was whether the complainant's level of intoxication rendered her incapacitated. The facts showed she "was conscious and aware enough to engage in a coherent exchange of texts, to make small talk, and to reason that, '[w]e were no longer clothed and I felt that if anything was to continue happening, I wanted a condom.'" *Oberlin Coll.*, 963 F.3d at 588. The college's determination that the complainant was incapacitated was so contrary to these facts that the Sixth Circuit viewed the dispute as "nearly a test case regarding the College's willingness ever to acquit a respondent sent to one of its hearing panels[.]" *Id.* In contrast here, the Hearing Officer rejected Jane's allegations of intoxication and found in Plaintiff's favor on numerous credibility issues.

For these many reasons, Plaintiff's deliberate indifference claim must be dismissed.

## II. Plaintiff Fails to Plausibly Allege Gender Bias Sufficient to Plead an Erroneous Outcome Claim

With respect to Plaintiff's erroneous outcome claim, "the issue . . . is not whether [the University's] determinations respecting [plaintiff's] behaviors were incorrect, but if so, whether they were incorrect *as a result of* gender bias." *Roe v. St. John's Univ.*, 91 F.4th 643, 653 n.10 (2d Cir. 2024). Plaintiff cobbles together a litany of alleged procedural improprieties and contends the Court should infer gender bias because the Hearing Officer's decision allegedly was "inexplicable." Dkt. 27, p. 23. Recognizing that this does not get him to a plausible claim of *gender* bias, *see St. John's Univ.*, 91 F.4th 643, Plaintiff argues events that occurred many years ago created pressure to discriminate against men. Plaintiff's effort to borrow these concepts from highly distinguishable case law is unpersuasive and his allegations do not cross the plausibility threshold.

The so-called "procedural irregularities" identified by Plaintiff do not suggest gender bias because they are (1) not "*clearly* irregular" (*Menaker v. Hofstra Univ.*, 935 F.3d 20, 34 (2d Cir. 2019)), (2) not "sufficiently numerous, lopsided, and/or important" (*Doe v. Univ. of S. Ind.*, 43 F.4th 784, 793 (7th Cir. 2022)), and/or (3) equally impacted both parties and thus do not support

any plausibly inference of *gender* bias. For example:

- Plaintiff claims the University "refused to interview" a witness, Dkt. 27, p. 20, but the University's policy does not contemplate that the University will interview *all* potential witnesses. Dkt. 1, p. 124. And critically, Jane also complained that the University failed to interview witnesses, Complaint, ¶ 364, thus the failure to do so cannot plausibly constitute evidence of gender bias.

- Plaintiff claims the University's final report was "skewed" toward Jane, Dkt. 27, p. 21, but this allegation is subjective and conclusory and based on a cherry-picked recitation of a lengthy investigative report that was merely the first step in an adjudicative process, which included live hearing testimony and cross examination.

- Plaintiff alleges the Title IX process took too long to complete, Dkt. 27, p. 22, but Jane was equally affected by any delay.

- Plaintiff criticizes the written notice he received, Dkt. 27, p. 22, but he points to no policy provision that was breached and concedes the notice recited "a litany" of nine specific charges, Complaint, ¶ 54, of which Jane's incapacitation and the cause of the bruises on her neck were elements.

- Plaintiff claims "[e]vidence was improperly collected . . . mid-hearing," Dkt. 27, p. 22, but there is no logical basis to infer gender bias from the collection of additional evidence during an adjudicative process that is, after all, designed to collect and adjudicate evidence.

- Plaintiff claims he was not provided Jane's written opening statement before the close of cross examination, Dkt. 27, p. 22, but the University's Policy imposes no such requirement.

These alleged procedural irregularities therefore do not come close to those alleged in *Menaker* or cases like it, *see* Dkt. 27, p. 23, and are insufficient to show gender bias.

Recognizing as much, Plaintiff attempts to plead gender bias by pointing to events that occurred long ago and did not involve any person who was involved in *this* Title IX process. Dkt. 20-1, p. 17-19. Plaintiff cites no contemporaneous pressure from the government, public, or student body, nor does he allege that any University representative involved *in his case* was ever criticized for mishandling sexual assault complaints. *See id.* Plaintiff's reliance exclusively on past events, absent some link to the University's investigation and decision-making *in this case*, does not carry him over the plausibility threshold.

Because Plaintiff cannot identify any contemporaneous pressure on the University in general, let alone on the individuals involved in his case, Plaintiff contends that only "a single district court case" stands for the proposition that the so-called "pressure" must be contemporaneous with the plaintiff's disciplinary proceeding, Dkt. 27, p. 24, but Plaintiff is wrong on the law. The Second Circuit established this pleading standard in a case where the public pressure *was contemporaneous* with the plaintiff's disciplinary proceeding. *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016) (contemporaneous with the plaintiff's disciplinary proceedings, there was an outcry on campus denouncing the university's handling of sexual assault claims brought by women). Consistent with that holding, and contrary to Plaintiff's interpretation, the Court in *Menaker* also held there must be "some pressure" on the university "*amid*" the proceedings against the plaintiff. *Menaker*, 935 F.3d at 32-34. Other Circuits have similarly held there must be a nexus between the pressure and the specific facts of a plaintiff's case. *Univ. of S. Ind.*, 43 F.4th at 793 (plaintiff's assertion that public pressure supported his claim of sex discrimination unconvincing where university "used independent contractors at each stage of the proceedings"); *Doe v. Stonehill Coll., Inc.*, 55 F.4th 302, 336 (1st Cir. 2022) ("the link Doe attempts to draw between these background factors and his disciplinary proceedings is too weak to create a plausible inference that sex bias played a role in how the process unfolded"). Holding otherwise would adopt the indefensible proposition that an institution is perpetually subject to claims based on events long ago that did not involve the relevant decisionmakers.

Plaintiff's effort to glean bias in educational materials that were prepared by SUNY leads to equally absurd results. Under Plaintiff's view, any institution that attended a SUNY training would be subject to a claim of gender bias. Plaintiff has no credible or substantive defense for such an absurd result, so he summarily labels this a "token rebuttal" without addressing it meaningfully.

Dkt. 27, p. 25. For these many reasons, the erroneous outcome claim must be dismissed.[2]

## III. Plaintiff's Breach of Contract Claim Remains Deficient for the Reasons Identified by the University

Plaintiff concedes dismissal of the claims based on alleged conflicts of interest, Complaint, ¶¶ 10-11, notice deficiencies, *id.*, ¶¶ 506(e), (f), (g), (h)), acceptance of improper evidence, *id.*, ¶¶ 506(m), (n), (p), and deadline issues, *id.*, ¶¶ 506(r), (s), by virtue of his failure to respond to the University's arguments. *Bernstein v. JPMorgan Chase Bank, N.A.*, 775 F. Supp. 3d 701, 714 (S.D.N.Y. Mar. 28, 2025) ("Plaintiffs have conceded this argument by failing to address it in their opposition"). With respect to the five alleged breaches that Plaintiff does address, *see* Dkt. 27, pp. 26-27, Plaintiff fails to state a claim for the following reasons.

1. <u>Presumption of Innocence</u>: Plaintiff alleges the University breached its policy to presume Plaintiff innocent, but as described above in Point I.B, the outcome belies this claim.

2. <u>Preponderance of the Evidence</u>: Although Plaintiff takes issue with the Hearing Officer's credibility determinations and the conclusions drawn, neither the language in the Hearing Officer's decision, nor the outcome, suggests that the Hearing Officer applied anything but the preponderance of the evidence standard.

3. <u>Equal Opportunity to Present Witnesses and Evidence</u>: Plaintiff claims the University breached its promise to provide "an equal opportunity to present witnesses . . . and other inculpatory and exculpatory evidence," Dkt. 27, p. 27, but this promise is too general to support his claim. *See Doe v. Syracuse Univ.*, 2023 U.S. Dist. LEXIS 106859, *50 (N.D.N.Y June 21, 2023) (promise to provide a "fair and impartial investigation" too "generalized" to support breach

[2] Plaintiff argues the University's motion to dismiss his NYSHRL claim should be denied because its motion to dismiss his Title IX claims should be denied. Dkt. 27, p. 26. But he does not dispute that his NYSHRL claim must be dismissed if his Title IX claim is dismissed.

claim alleging investigators were biased and did not credit witnesses). As the University argued, and Plaintiff ignores, Jane also felt as if some of her evidence was not considered, but the Policy does not require the investigators to interview *every* potential witness or collect *all* potential evidence. *See* Dkt. 20-1, pp. 24, 25-26; Dkt. 1, pp. 124, 125, 137.

4. Biased Training Materials: The University's Policy states its investigators will have "appropriate training and experience" and the Complaint says nothing about their training or experience except that they attended a SUNY training session that Plaintiff claims was "biased." Putting aside Plaintiff's rhetoric and selective portrayal of the training materials, there is no plausible basis for Plaintiff's contention that sending investigators to SUNY training constitutes a failure to provide investigators with "appropriate training and experience."

## IV. PLAINTIFF'S NEGLIGENCE CLAIM FAILS DUE TO THE ABSENCE OF ANY TORT DUTY

Because "duty is an essential element" of negligence, *Applewhite v. Accuhealth, Inc.*, 21 N.Y.3d 420, 426 (2013), negligence claims like Plaintiff's fail as a matter of law due to the absence of any tort duty within the context of a Title IX proceeding. Dkt. 20-1, pp. 29-30 (collecting cases). This point is indisputable and thus Plaintiff ignores every one of the applicable cases, of which there are many. *Id.*; Dkt. 27, p. 29. Instead of addressing the pertinent authority, Plaintiff pivots to a purported *negligent supervision* claim that he unpersuasively anchors in soundbite quotes from *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81 (2d Cir. 2011)—a case that is so plainly inapplicable that District Courts typically do not even cite when deciding negligence claims in the context of Title IX proceedings. *See, e.g.*, *Noakes v. Syracuse Univ.*, 369 F. Supp. 3d 397, 420-21 (N.D.N.Y. 2019) (rejecting the plaintiff's argument that the university owed the plaintiff a duty of care to manage a Title IX process in an "non-negligent manner and with due care"). Dkt. 20-1, pp. 29-30 (collecting cases).

In *Papelino*, the plaintiff made a report to the College's Associate Dean that his professor had sexually harassed him. Just weeks after the dean confronted her, the professor (and alleged perpetrator of the harassment) fabricated cheating allegations and "spearheaded" "cheating charges" against plaintiff under the Honor Code. 633 F.3d at 84, 91. Given the professor's blatant "self-interest" and "conflict of interest," "the College's decision to permit her to serve . . . as the prosecutor and star witness in the Honor Code proceedings was highly questionable" and created a question of fact as to whether the College should have known she "would misuse the [disciplinary] process to engage in . . . a 'charade.'" *Id.* at 95. On these facts, the plaintiff plausibly alleged negligent supervision because the College should have known the professor was "unfit" to spearhead an Honor Code proceeding against the plaintiff. Plaintiff's allegations that the "key players" here knew Jane's advisor and received allegedly "biased" SUNY training, Dkt. 27, p. 29, are not at all like the allegations in *Papelino*. Courts routinely reject such allegations as a basis for a negligence claim. Dkt. 20-1, pp. 29-30 (collecting cases).

## V. Plaintiff Fails to Distinguish His Breach of the Covenant of Good Faith and Fair Dealing Claim

Plaintiff abandons the portion of his good faith and fair dealing claim relating to the allegation that the University's findings "went against the preponderance of the evidence," Complaint, ¶ 514, but he pursues a claim "based on UR's failure to disclose conflicts[,]" Dkt. 27 at 28. This theory duplicates his contract claim, which he claims is based on the University's breach of its promise to provide a "fair" and "impartial" process by allowing individuals with conflicts to investigate and adjudicate Jane's allegations. Complaint, ¶¶ 505, 506(c), (d). Both claims stem from the same provision of the University's policy. Dkt. 1, pp. 129. The conduct serving as the predicate for both claims is identical. Plaintiff's good faith and fair dealing claim must therefore be dismissed. *See Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 373 (S.D.N.Y. 2016).

**CONCLUSION**

For the reasons set forth above, and in the University's moving papers, the University's motion to dismiss should be granted, and Plaintiff's Complaint should be dismissed.

Dated: May 12, 2026

**HODGSON RUSS LLP**

By: s/Joshua M. Agins

Thomas S. D'Antonio
Joshua M. Agins
Molly F. Plewinski

1800 Bausch & Lomb Place
Rochester, New York 14604
(585) 454-0700
jagins@hodgsonruss.com
mplewinski@hodgsonruss.com

*Attorneys for University of Rochester*